IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SAMUEL F. KAFRISSEN, et al.          :          CIVIL ACTION

      v.                                  :

BEEBE KOTLIKOFF                       :          NO.  08-2326

**MEMORANDUM AND ORDER**

THOMAS J. RUETER                                          July 9, 2009
Chief United States Magistrate Judge

      Presently before the court are Plaintiffs' Motion to Dismiss Defendant's Counterclaims and Motion of Samuel F. Kafrissen, P.C. to Dismiss Defendant's Third Party Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (collectively, Doc. No. 27) ("Motion to Dismiss"), and all responsive pleadings relating thereto.  Oral argument was heard on the Motion to Dismiss on July 7, 2009.

**I.    STANDARD OF REVIEW**

      "When deciding a motion under Federal Rule of Civil Procedure 12(b)(6), a district court must 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Grammar v. John J. Kane Regional Centers – Glen Hazel, ___ F.3d ___, 2009 WL 1885926, at *1 (3d Cir. June 30, 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).

**II.    FACTS**

      The facts in this case are complex.  The court will summarize the facts relevant to the instant Motion to Dismiss in the light most favorable to the counterclaim and third party

plaintiff, Beebe Kotlikoff.  Mrs. Kotlikoff, defendant/counterclaim and third party plaintiff, is the wife of decedent Louis J. Kotlikoff and executrix of his estate.  In October 2004, three months prior to his death on January 14, 2005, while knowingly suffering from brain cancer, Mr. Kotlikoff formed the law firm of Kotlikoff Kafrissen, LLC (the "K&K Law Firm"), with Samuel F. Kafrissen, an individual plaintiff named herein, for the purpose of "working together on the list of cases which you [Mr. Kotlikoff] presently have (list to be attached) and such future cases that will come into the office."  See October 2004 Letter Agreement (Amended Answer, Counterclaim and Third Party Complaint Exh. A).

In the October 2004 Letter Agreement, dated October 4, 2004 (with an effective date of October 26, 2004), from Mr. Kafrissen to Mr. Kotlikoff, Mr. Kafrissen outlined the agreement between the two attorneys.  The agreement included that upon the death of a partner, the partners would divide the net profits from a predetermined list of cases brought to the firm by Mr. Kotlikoff (the "Kotlikoff cases"), with one-third going to Mr. Kotlikoff and two-thirds going to Mr. Kafrissen.  Defendant contends that the tax returns of the K&K Law Firm show approximately $1.5 million in fees, most of which were generated from the Kotlikoff cases. (Def.'s Br. Opp. Mot. to Dismiss at 8.)  At the oral argument, while the parties did not agree on the exact amount of fees collected by the K&K Law Firm on account of the Kotlikoff cases, plaintiffs' counsel did admit that the K&K Law Firm collected approximately $1.2 million in fees from those cases.  However, plaintiffs contend, inter alia, that because the fees collected on account of the Kotlikoff cases were collected after Mr. Kotlikoff's death, the October 2004 Letter

Agreement does not apply, and New Jersey General Application Rule 1:21-1B ("Rule 1:21-1B")[1] prohibits Mr. Kotlikoff from receiving any portion of the fees collected on the Kotlikoff cases.

In her counterclaims and third party complaint, defendant seeks to collect her husband's one-third share of said fees, as well as other monies defendant claims are owing to the estate of Mr. Kotlikoff by plaintiffs, and asserts such other remedies and damages as stated more fully therein. Defendant asserts, inter alia, that Mr. Kotlikoff "spent considerable time and effort, including expenses in providing the necessary legal services on those files during his life time before and after the October 2004 Agreement, and Mr. Kotlikoff is entitled to compensation for the work he performed on those files prior to his death." (Def.'s Br. Opp. Mot. to Dismiss at 5 (citing Rule of Professional Conduct 5.4).) Defendant maintains that the terms of the October 2004 Letter Agreement must be honored. Id. at 2.

Plaintiffs filed the instant Motion to Dismiss on April 24, 2009. Plaintiffs seek limited relief. "Plaintiffs only seek an order that Rule 1:21-1B prohibits defendant from any [sic] receiving monies for services provided **after** Kotlikoff's death or contesting plaintiffs' decisions made **after** Kotlikoff's death." (Pls.' Supp. Mem. of Law Supp. Mot. to Dismiss at 2 (Doc. No. 31).)

### III. DISCUSSION

Plaintiffs assert that their Motion to Dismiss must be granted because Rule 1:21-1B "prohibits defendant from obtaining any monies that flowed into the LLC or participating in

---

[1] Rule 1:21-1B is a rule promulgated by the New Jersey Supreme Court. (Motion to Dismiss at 3 n.3.)

any decisions of the LLC after Louis Kotlikoff's death." (Mot. to Dismiss at 1-2.) In pertinent part, Rule 1:21-1B provides as follows:

> (d)(2) The continued interest of a member as described in (1) above during the period specified shall not include the right to participate in any decisions concerning the rendering of professional legal services by the limited liability company, nor the right to receive any portion of the earnings or profits of the limited liability company <u>derived from legal services rendered by the limited liability company subsequent to the date of death</u>, disqualification, or withdrawal from membership or termination of employment.

Rule 1:21-1B (emphasis added).

In determining the meaning of a court rule or statute, the court must consider first the plain language of the rule. If the language of the rule is clear, the court must interpret the rule consistent with its meaning. Oberhand v. Director, Division of Taxation, 940 A.2d 1202, 1207 (N.J. 2008). See also Newell v. Ruiz, 286 F.3d 166, 168-69 (3d Cir. 2002) ("[W]hen the statutory language is clear on its face, the sole function of the court is to enforce it according to its terms.") (applying New Jersey law and quoting Hubbard v. Reed, 774 A.2d 495, 498 (N.J. 2001)). Considering the facts in the light most favorable to the defendant/counterclaim and third party plaintiff, and applying the plain language of Rule 1:21-1B to those facts, this court finds that there exists a reasonable reading of the third party complaint/counterclaims under which defendant/counterclaim and third party plaintiff may be entitled to relief.

Defendant asserts that Mr. Kotlikoff "spent considerable time and effort, including expenses in providing the necessary legal services on those files during his life time before and after the October 2004 Agreement, and Mr. Kotlikoff is entitled to compensation for the work he performed on those files prior to his death." (Def.'s Br. Opp. Mot. to Dismiss at 5 (citing Rule of Professional Conduct 5.4).) Assuming this fact is true, under the plain language

of Rule 1:21-1B, defendant would be entitled to receive a portion of the earnings and profits received by the K&K Law Firm on account of the Kotlikoff cases because the legal services rendered by Mr. Kotlikoff were rendered prior to his death. While K&K Law Firm may have collected the fees after Mr. Kotlikoff's death, Mr. Kotlikoff rendered the legal services prior to his death. So long as Mr. Kotlikoff rendered the legal services prior to his death, Rule 1:21-1B does not preclude him from receiving a portion of the earnings or profits collected by the K&K Law Firm.

Similarly, plaintiffs contend that Rule 1:21-1B prohibits defendant from participating in any decisions of the K&K Law Firm after Mr. Kotlikoff's death. Rule 1:21-1B(d)(2) provides that "[t]he continued interest of a member as described in (1) . . . shall not include the right to participate in any decisions concerning the <u>rendering of professional legal services by the limited liability company</u>." Rule 1:21-1B(d)(2) (emphasis added). Many of the decisions of the K&K Law Firm questioned by defendant in the counterclaims and third party complaint, do not concern the "rendering of professional legal services" by the law firm. For example, in the First Count of the Counterclaim, defendant avers that approximately $300,000 was paid improperly from the K&K Law Firm accounts to plaintiffs (¶ 21), that plaintiffs failed to pay rental payments and file storage expenses due to defendant (¶¶ 35, 37), and that plaintiffs wrongfully caused K&K Law Firm to pay the health insurance premiums of plaintiff Samuel F. Kafrissen (¶ 40). Plaintiffs contends that Rule 1:21-1B prohibits defendant from participating in these decisions of K&K Law Firm. However, none of the decisions listed above from defendant's First Count of the Counterclaim, concern the "rendering of professional legal services" by K&K Law Firm prohibited by Rule 1:21-1B.

In addition, the gravamen of defendant/counterclaim and third party plaintiff's argument is not that she was denied the right to "participate" in these decisions when made, but that the plaintiffs' decisions amount to fraud or malfeasance, which diminished the value of her husband's shares in the K&K Law Firm. Rule 1:21-1B does not bar this type of claim.

For the reasons stated herein, it is hereby **ORDERED** that the Motion to Dismiss (Doc. No. 27) is **DENIED**.

BY THE COURT:

/s/ TJR
THOMAS J. RUETER
Chief United States Magistrate Judge