IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMUEL F. KAFRISSEN, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BRITTA KOTLIKOFF, et al. | : | NO. 08-2326 |

**MEMORANDUM OF DECISION**

THOMAS J. RUETER                                                 October 1, 2010
Chief United States Magistrate Judge

       Presently before the court is a motion for partial summary judgment to release funds and deny claims (Doc. No. 54), filed on behalf of defendant Britta Kotlikoff, individually and as Executrix of the Estate of Louis J. Kotlikoff. Plaintiffs, Samuel F. Kafrissen, Carole F. Kafrissen and Kotlikoff Kafrissen, LLC, oppose the motion. For the reasons that follow, the court will deny the motion.

**I.    FACTS**

       Viewing the evidence in the light most favorable to the non-movants, the following are the material facts.

       In the summer of 2004, Louis Kotlikoff, Esquire, made an offer to Samuel and Carole Kafrissen to join together to create a law firm. (Declaration of Samuel F. Kafrissen ¶ 1, hereinafter referred to as "Declaration.") Mr. Kotlikoff had known the Kafrissens for many years, and the parties maintained a friendly, professional relationship. Id. Prior to this time, Mr. Kotlikoff had his own law firm, with associates, which handled personal injury claims. Id. ¶ 2. Mr. Kotlikoff explained to the Kafrissens that he needed to partner with other lawyers because he was in declining health due to a brain tumor, and that the Kotlikoff firm had financial difficulties caused by a decline in business and the loss of his two associates, Craig R. Fishman and Allen J.

Littlefield.  Id.

During the summer and fall of 2004, Mr. Kotlikoff had extensive conversations with the Kafrissens about their possible joinder in a new law firm.  Id. ¶ 4.  Mr. Kotlikoff told the Kafrissens that he initiated litigation against his former associates, Fishman and Littlefield, for improperly taking clients' cases with them when they left the firm (the "Fishman Litigation"). Id.  Mr. Kotlikoff also informed the Kafrissens that he needed help in rebuilding the firm "in order to protect the firm's prestigious reputation during his lifetime and after his death."  Id.

The Kafrissens allege that to induce them to join Mr. Kotlikoff in this new law firm, Mr. Kotlikoff promised that the Kafrissens would receive ⅔ of all net revenue, including ⅔ of the proceeds from the Fishman Litigation.  Id.  "Kotlikoff pledged this to the firm without limitation, because the firm required this infusion of money to prosper."  Id.  The Kafrissens further aver that the parties "jointly drafted a two-page agreement which they understood entitled the Kafrissens to ⅔ of all net revenue, including the Fishman litigation proceeds."  Id. ¶ 6.  The Kafrissens state that after Mr. Kotlikoff reviewed the agreement with his attorneys, both parties signed the agreement.  Id. ¶ 7-8.  The two-page written agreement, signed by the parties, provided the following, in pertinent part:

> To:     Lou Kotlikoff, Esq.
> From: Samuel Kafrissen, Esq.
> October 4, 2004
>
> We look forward to forming a joint venture (or other agreeable entity) for the specific limited purpose of working together on the list of cases which you presently have (list to be attached) and such future cases that will come into the office.
>
> You have indicated to us that the revenue in place, cash in the account, case receipts and revenue from your two former associates is sufficient to cover the

operating costs and case costs from the inception, and that neither of us should have to fund these costs.

We expect to fund future operating costs from firm revenue.

If the revenue exceeds the operating costs we will reserve up to four months future projected operating costs before making any profits distribution.

If the revenue is insufficient to meet the agreed monthly operating expenses, Kafrissen will contribute ⅔ and Kotlikoff will contribute ⅓ of the net amount needed in regard to the costs as mutually agreed upon. If the amount to be funded by Kafrissen is more than $7,500.00, in any month, or more than $10,000.00 in total in any two consecutive months, then Kafrissen at its' option can cancel this agreement upon two weeks notice.

We agree to divide all net revenue, after paying the costs of the cases and any agreed operating expenses, ⅔ to Kafrissen and ⅓ to Kotlikoff.

We will distribute the work to be done between the two groups based upon the ability of each group to perform the services.

In the event of the disability, retirement or death of a partner, the partnership agrees to continue the work on the then existing list of cases on the above formula. (⅓ of the net profits to Kotlikoff subject to payment of ⅓ expenses/costs by Kotlikoff and ⅔ of the net profits to Kafrissen subject to the ⅔ payment of expenses/costs.)

. . . .

The effective date of this working arrangement shall be October 26, 2004.

Kafrissen is not responsible for any claims made arising from any work performed on files prior to October 26, 2004. Kotlikoff will indemnify and agrees to hold Kafrissen harmless from any and all such claims.

We will both sign the bottom of this document affirming our agreement to the above terms.

(Exhibit "A" to the Complaint, hereinafter referred to as the "Agreement.")

After signing the Agreement, the Kafrissens participated in "strategy" meetings with Mr. Kotlikoff and Kenneth Andres, Esq., who represented Mr. Kotlikoff in the Fishman

Litigation. (Declaration ¶ 12.) In addition, "Mr. Kotlikoff repeatedly discussed Fishman litigation strategy with the Kafrissens as well as the best way for the firm to use Fishman litigation proceeds." Id. ¶ 13.

On May 19, 2008, the Kafrissens filed this action. In the Complaint, plaintiffs alleged that in January, 2005, Louis Kotlikoff died, and that his wife, Britta Kotlikoff, was appointed executrix of his estate ("the "Estate"). (Complaint ¶ 14.) On August 23, 2005, the Estate settled the Fishman Litigation against the two associates, whereby Fishman and Littlefield were to pay Mr. Kotlikoff a percentage of the monies from the settlement of the cases they took when they left the firm. Id. ¶ 15. As a result of the settlement, the monies paid by Fishman and Littlefield to settle the dispute have been placed in escrow pending the outcome of this instant case. Plaintiffs request that the court award them ⅔ of the escrow funds, in accordance with the agreement they had with Mr. Kotlikoff. In Count One of the Complaint, plaintiffs request an order directing defendant to forward the settlement funds to plaintiffs for distribution. Count Two alleges breach of contract and Count Three alleges a breach of fiduciary duty.

In her motion for partial summary judgment, defendant claims that the written agreement her husband signed with plaintiffs is unambiguous, and that the agreement does not provide for the sharing of the proceeds of the Fishman Litigation settlement between plaintiffs and Mr. Kotlikoff. Instead, defendant argues that plaintiffs are not entitled to any amount of the escrow funds.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "the pleadings, the discovery and the disclosure materials on file, and any declarations show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it might affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Furthermore, an issue is "genuine" if a reasonable jury possibly could hold in the non-movant's favor on that issue. Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998). To demonstrate that no material facts are in dispute, the moving party must show that the non-moving party has failed to establish one or more essential elements of his or her case. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In analyzing the evidence, the court will view the facts in the light most favorable to the non-moving party and draw all inferences in that party's favor. Prowel v. Wise Bus. Forms, Inc., 579 F.3d 285, 286 (3d Cir. 2009). Once the moving party has demonstrated that there is no genuine issue of material fact, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### III. DISCUSSION

The parties agree that New Jersey law governs this action. Defendant argues that the Agreement signed by the parties to form their law partnership provides for a sharing of the attorney fees generated from a list of cases attached as Exhibit "A" to the Agreement, "and such future cases that will come into the office," and that the cases subject to the settlement agreement with Fishman and Littlefield are not listed on Exhibit "A." Defendant suggests that the reference to the "revenue" from the two former associates is only to recite that this money was available to Mr. Kotlikoff to cover costs, but he did not agree to share this "revenue" with plaintiffs.

5

Plaintiffs, in contrast, argue that the Agreement requires division of "all net revenue, after paying the costs and any agreed operating expenses ⅔ to Kafrissen and ⅓ to Kotlikoff." (emphasis added). Plaintiffs contend that the Agreement refers to the proceeds from the Fishman Litigation as "revenue." See Agreement ¶ 2 ("revenue from your two former associates is sufficient to cover the operating costs and cases costs from the inception, and that neither of us should have to fund these costs"). Thus, plaintiffs conclude that the Agreement requires the revenue generated from the settlement of the Fishman Litigation to be divided by the ratio set forth in the Agreement - ⅔ to the Kafrissens and ⅓ to Kotlikoff.

New Jersey law permits the liberal use of extrinsic evidence to explain contract terms "even when the contract on its face is free from ambiguity." Conway v. 287 Corporate Center Associates, 901 A.2d 341, 347 (N.J. 2006). See Atlantic Pier Assocs., LLC v. Boardakan Rest. Partners, 647 F. Supp. 2d 474, 488 (E.D. Pa. 2009) (court noted that "New Jersey allows more liberal usage of extrinsic evidence to explain contract terms than Pennsylvania"); Reutter v. Dalsey, 2009 WL 1686624, at *5 (N.J. Super. App. Div. June 18, 2009) (unpublished opinion) (noting that New Jersey has adopted an "expansive and liberal standard" to determine the admissibility of extrinsic evidence to explain contract terms), cert. denied, 983 A.2d 199 (N.J. Oct. 8, 2009). In Conway, the New Jersey Supreme Court stated the following:

> Evidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement. This is so even when the contract on its face is free from ambiguity. The polestar of construction is the intention of the parties to the contract as revealed by the language used, taken as an entirety; and, in the quest for the intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain are necessarily to be regarded. The admission of evidence of extrinsic facts is not for the purpose of changing the writing, but to secure light by which to measure its actual significance. Such evidence is adducible only for the purpose of interpreting the writing - not for the

6

purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning of what has been said. So far as the evidence tends to show, not the meaning of the writing, but an intention wholly unexpressed in the writing, it is irrelevant. The judicial interpretive function is to consider what was written in the context of the circumstances under which it was written, and accord to the language a rational meaning in keeping with the expressed general purpose.

Within the constraints described in Schwimmer, we allow a thorough examination of extrinsic evidence in the interpretation of contracts. Such evidence may include consideration of the particular contractual provision, an overview of all the terms, the circumstances leading up to the formation of the contract, custom, usage, and the interpretation placed on the disputed provision by the parties' conduct. Semantics cannot be allowed to twist and distort [the words'] obvious meaning in the minds of the parties. Consequently, the words of the contract alone will not always control.

In sum, we permit a broad use of extrinsic evidence to achieve the ultimate goal of discovering the intent of the parties. Extrinsic evidence may be used to uncover the true meaning of contractual terms. It is only after the meaning of the contract is discerned that the parol evidence rule comes into play to prohibit the introduction of extrinsic evidence to vary the terms of the contract.

Id. at 347 (quotations and citations omitted).

Applying the above principles to the facts of this case, it is clear that Samuel Kafrissen's testimony as to the history of the negotiations and the oral discussions plaintiffs had with Mr. Kotlikoff are admissible to determine the meaning of the Agreement plaintiffs had with the late Louis Kotlikoff. See Declaration ¶ 1-13. As noted in Conway, under New Jersey law, extrinsic evidence is admissible to aid in the interpretation of a contract "even when the contract on its face is free from ambiguity." Conway, 901 A.2d at 347. In any event, the court finds that, without consideration of the parol evidence, the Agreement of the parties is ambiguous with respect to the issue before the court. Under New Jersey law, a provision of a contract is ambiguous if it is "susceptible to at least two reasonable alternative interpretations." Nester v. O'Donnell, 693 A.2d 1214, 1220 (N.J. Super. App. Div. 1997) (citations omitted).

7

The different interpretations suggested by both plaintiffs and defendant are reasonable. A reasonable jury could find in favor of defendant on her argument that Mr. Kotlikoff did not agree to share the proceeds of the settlement of the Fishman Litigation with plaintiffs. Defendant contends that the Agreement that was signed by the parties to form their law partnership provides for a sharing of the attorney fees generated from a list of cases attached as Exhibit "A" to the Agreement, "and such future cases that will come into the office," and that the cases subject to the settlement agreement with Fishman and Littlefield are not listed on Exhibit "A." A reasonable jury could conclude, as defendant suggests, that the reference to the "revenue" from the two former associates evinces that this money was available to Mr. Kotlikoff to cover costs, but does not obligate Mr. Kotlikoff to share this "revenue" with plaintiffs.

Conversely, plaintiffs have offered a reasonable interpretation that the Agreement provides that Mr. Kotlikoff was obligated to contribute to the firm "revenue from . . . . [his] two former associates . . . to cover the operating costs and case costs" of the firm "from the inception," and that "all net revenue" was to be divided ⅔ to Kafrissen and ⅓ to Kotlikoff, "after paying the costs of the case and any agreed operating expenses." Moreover, the Agreement provides that neither party should have to fund costs, because the revenue would be sufficient to cover the costs. See Agreement ¶ 2. Mr. Kafrissen's Declaration corroborates plaintiffs' reasonable interpretation that Kotlikoff was required under the Agreement to dedicate all the Fishman Litigation revenue to the new firm. According to Mr. Kafrissen, all of the revenue from the Fishman Litigation should have been deposited into the new firm's revenue account and shared between the Kafrissens and Mr. Kotlikoff according to the ratio in the Agreement. Id. ¶ 5-6. Accepting the truth of Mr. Kafrissen's testimony, combined with a reading of the Agreement,

a reasonable jury could find that Kafrissen's understanding of the Agreement was the true agreement of the parties.[1] Accordingly, summary judgment cannot be granted in favor of defendant on plaintiffs' claims in their complaint.

Defendant also argues that plaintiffs have a higher burden of proof if they rely on oral statements of Mr. Kotlikoff to support their breach of contract claim. Defendant notes that under New Jersey law, when a party seeks to assist a claim "based on the oral testimony of a promise, statement or act of a decedent," he must prove such testimony by "clear and convincing proof." N.J.S.A. 2A:81-2; Czoch v. Freeman, 721 A.2d 1019, 1024 (N.J. Super. Ct. App. Div. 1999). Assuming that plaintiffs' claims of breach of contract and fiduciary duty are subject to the clear and convincing standard, a rational jury could find for plaintiffs even under this more demanding standard. See Chance v. McCann, 966 A.2d 29, 44 (N.J. Super. Ct. App. Div. 2009) (applying clear and convincing standard of defense to breach of written partnership agreement

---

[1] In reaching this conclusion, the court has considered defendant's argument that the sharing of the revenue from the Fishman Litigation violated New Jersey Rule of Professional Conduct 1.5(e), which provides in pertinent part:

(e) Except as otherwise provided by the Court Rules, a division of fee between lawyers who are not in the same firm may be made only if:

(1) the division is in proportion to the services performed by each lawyer, or, by written agreement with the client, each lawyer assumes joint responsibility for the representation; and

(2) the client is notified of the fee division; and
(3) the client consents to the participation of all the lawyers involved; and

(4) the total fee is reasonable.

The court rejects this argument because the revenue from the Fishman Litigation was not to be shared by lawyers from different firms, but according to plaintiffs, was to be part of the revenue of a law partnership between Mr. Kotlikoff and plaintiffs. Thus, the rule is inapplicable to the facts as presented by plaintiffs.

between two lawyers based on oral statements of the decedent). "Clear and convincing evidence" is evidence that produces in the jury's mind a firm belief or conviction that the allegations sought to be proved by the evidence are true. See Matter of Purrazzella, 633 A.2d 507, 514 (N.J. 1993) (clear and convincing evidence is evidence that "should produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established"); Third Circuit Model Jury Instructions, Civil § 1.11 (2008) (same).

Should the jury credit the testimony of the Kafrissens and their interpretation of the Agreement, it could reach "a firm belief or conviction" that defendant breached her obligations to plaintiffs. See Blanco v. Dooley, 395 A.2d 909, 911 (N.J. Supp. App. Div. 1978) (finding that plaintiff satisfied clear and convincing standard because trial court found plaintiff's testimony credible and it was supported by written documentation).

## IV. CONCLUSION

For all the above reasons, defendant's motion for partial summary judgment should be denied. An appropriate order follows.

BY THE COURT:

   /s/ Thomas J. Rueter
THOMAS J. RUETER
Chief United States Magistrate Judge