IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMUEL F. KAFRISSEN, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BRITTA KOTLIKOFF, individually and | : | NO. 08-2326 |
| as the Executrix of the Estate of | : | |
| Louis J. Kotlikoff | : | |

## MEMORANDUM OF DECISION

THOMAS J. RUETER                                         January 25, 2011
Chief United States Magistrate Judge

Presently before the court is plaintiffs' Motion In Limine To Preclude Defendant's Expert Report and Expert Testimony (Doc. No. 69) (the "Motion"), defendants' brief in opposition thereto (Doc. Nos. 76 and 78 (Exhibits)) ("Def.'s Br."), plaintiffs' supplemental memorandum in support of the Motion (Doc. No. 79) ("Pls.' Supp. Mem."), and plaintiffs' further supplemental memorandum in support of the Motion (Doc. No. 113) ("Pls.' Second Supp. Mem."). After a hearing on January 21, 2011, and for the reasons explained below, the Motion is **DENIED**.

This court bifurcated the litigation in this action by submitting plaintiffs' complaint to the jury for trial. The jury returned a verdict for defendants. The counterclaim and third party complaint will be submitted for a jury trial commencing on January 27, 2011. The issues now before the court involve the counterclaim and third party complaint. For ease and to avoid confusion, counterclaim and third party plaintiffs, Britta Kotlikoff, individually and as Executrix of the Estate of Louis J. Kotlikoff, defendants in the matter already adjudicated, will be referred to herein as "plaintiffs." Counterclaim and third party defendants, plaintiffs in the matter already adjudicated, and Samuel F. Kafrissen, P.C., will be referred to herein as "defendants."

**I.    FACTS**

This case concerns a dispute over an Agreement dated October 4, 2004 ("the Agreement") to form a New Jersey law firm, which became known as Kotlikoff Kafrissen, LLC (the "K&K Law Firm"). The parties to the Agreement were Samuel F. Kafrissen, Esquire and Carole F. Kafrissen, Esquire ("the Kafrissens") on the one part, and Louis J. Kotlikoff ("Mr. Kotlikoff"), who died on January 14, 2005, three months after the formation of the law firm. Plaintiffs filed a Counterclaim in this action against defendants alleging that pursuant to the Agreement, defendants owe her late husband a substantial sum of money. Furthermore, plaintiffs allege that defendants misappropriated or converted monies belonging to the KK Law Firm and directed them to Samuel F. Kafrissen's law firm, known as Samuel F. Kafrissen, P.C., which has been named as a third-party defendant by Mrs. Kotlikoff.

The Counterclaim alleges that under the Agreement to create the law firm, Louis Kotlikoff contributed approximately 228 cases that had previously been worked on by Mr. Kotlikoff while he practiced at his old firm. According to the Agreement, Mr. Kotlikoff was to receive ⅓ of the net proceeds of fees generated by these cases and the Kafrissens would receive ⅔. More specifically, the Agreement provided the following:

> In the event of the disability, retirement or death of a partner, the partnership agrees to continue the work on the then existing list of cases on the above formula. (⅓ of the net profits to Kotlikoff subject to payment of the ⅓ expenses/costs by Kotlikoff and ⅔ of the net profits to Kafrissen subject to the ⅔ payment of expenses/costs.)

(Ex. DCC-1.)

The Counterclaim further states that prior to the formation of the new law firm, Mr. Kotlikoff "had advanced moneys [sic] as costs on case files" that were subject to the ⅓ – ⅔

2

division of fees, and these advanced monies were in excess of $150,000 (Countercl. ¶¶ 12-13). Mrs. Kotlikoff alleges that defendants "have refused to pay over the advanced costs moneys [sic] to the Estate." Id. ¶ 17.

The Counterclaim and Third-Party Complaint alleges that during the years 2005 through 2009, Samuel Kafrissen "improperly and wrongly" diverted $300,000 of the funds belonging to the K&K Law Firm to his own law firm Samuel F. Kafrissen, P.C., and/or to himself or to Carole Kafrissen (Countercl. ¶¶ 21-24; Third Party Compl., First Count ¶ 3). In Paragraph 35 of the Counterclaim, Mrs. Kotlikoff claims that the Kafrissens failed to pay rental payments for the building from where the law firm operated, 70 Tanner Street, Haddonfield, New Jersey, which was owned by Mr. Kotlikoff and his Estate. Further, Mrs. Kotlikoff alleges a conspiracy among defendants and Samuel F. Kafrissen, P.C. and alleges that they "committed evil minded acts, and participated in intentional wrongdoing all of which constitutes malice and subjects the counterclaim/defendants to liability for punitive damages." (Countercl. ¶¶ 50-51.)

## II. DISCUSSION

At the trial of this action, plaintiffs plan to call as an expert witness, George F. Beppel, CPA. Defendants do not dispute the qualifications of Mr. Beppel. Mr. Beppel will testify to support the damages claimed in the Counterclaim. He offers four opinions.

> First, Louis Kotlikoff's share of firm profits from 2005 to 2008 related to the then existing list of cases upon his death was $233,413.00;
>
> Second, that Mrs. Kotlikoff is owed $27,250.72 from monies received by the K&K Law Firm from Mr. Kotlikoff's old law firm in 2005. The K&K Law Firm recorded this amount as a liability on its books since January of 2005 through December 31, 2008;

> Third, that under the Agreement, Mrs. Kotlikoff is entitled to recover the costs advanced by Louis J. Kotlikoff on the cases assumed by the K&K Law Firm, which total $251,771.50; and
>
> Fourth, that unpaid rent for the use of 70 Tanner Street, Haddonfield, New Jersey totals $16,154.90.

(Beppel Report at 16.)

The admission of expert testimony is governed by Federal Rule of Evidence 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied to principles and methods reliably to the facts of the case.

Id. Rule 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (citations and footnote omitted). The requirement that expert testimony "fit," that is assist the trier of fact, goes primarily to relevance. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 591 (1993) (evidence which does not relate to an issue in the case is not relevant and not helpful to the jury); see also In re Paoli R. R. Yard PCB Litigation, 35 F.3d 717, 742-43 (3d Cir. 1994) (discussing Daubert's requirement that there be a valid connection between expert testimony and pertinent inquiry). To "fit" under the facts of the case, the testimony must "aid the jury in resolving a factual dispute." Daubert, 509 U.S. at 591 (quoting United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985)).

In the Motion, defendants object to the four above-referenced opinions by Mr. Beppel on the grounds that, inter alia, New Jersey law prohibits "such profit sharing" and

4

governs the relationship between the parties. (Mot. at 1.) Specifically, defendants cite to New Jersey Rule of General Application 1:21-1B ("Rule 1:21-1B"), which provides in pertinent part:

> (d) No person shall hold any interest in any limited liability company engaged in the practice of law unless licensed to practice law and actually and actively engaged in the practice of law as a member, employee or agent of, or "of counsel" to the limited liability company, except for leave of absence not to exceed one year and for absences on account of illness, accident, time spent in the armed services and vacation. The legal representative of a deceased member, a member disqualified from the practice of law, or a member who is withdrawing from membership in the limited liability company or whose employment with the limited liability company is being terminated for any reason whatsoever, may continue to hold an interest in the limited liability company for the following periods and under the following conditions:
>
>> (1) Within 375 days following the date fo death of a member or within 90 days following the member's disqualification from the practice of law, of the member's withdrawal from membership or termination of employment, all of the interest of the member shall be transferred to, and acquired by the limited liability company or attorneys qualified to own the interest. If the transfer and acquisition is not otherwise effected within the specified period, the limited liability company shall forthwith purchase and redeem all of the member's interest at the value established in the operating agreement, if any. If the method of valuation is not established by agreement, redemption shall be at the book value of the shares, determined as of the end of the month immediately preceding death, disqualification, withdrawal or termination. For this purpose, the book value shall be determined by an independent certified accountant employed by the limited liability company from the books and records of the limited liability company in accordance with the regular methods of accounting used by it. Nothing contained herein shall prevent the parties from agreeing, either through the operating agreement or otherwise, to another arrangement for the transfer of a member's interest to the limited liability company or persons qualified to own the interest, provided that within the periods specified, all of the interest involved shall have been so transferred.

Rule 1:21-1B(d)(1). Defendants assert that this Rule "prohibits all remedies other than redemption of the deceased partner's interest in the LLC." (Mot. at 2.) Defendants further contend that "Mr. Beppel's report fails to request redemption or calculate the book value of Mr.

5

Kotlikoff's interest. Instead, Mr. Beppel purports to compute 'profits' owed to Mr. Kotlikoff's estate, a procedure not permitted under Rule 1:21-1B. Since this methodology violates Rule 1:21-1B, his report and his testimony are inadmissible." Id. at 2-3.[1]

The first category of damages addressed by Mr. Beppel is for compensation due to Mr. Kotlikoff for services rendered by him prior to his death, on the 200 plus cases transferred from Mr. Kotlikoff to the K&K Law Firm. (Def.'s Br. at 9-11.) Plaintiffs assert that this compensation is permitted under the New Jersey statute, which only prohibits a former member of a limited liability company from receiving earnings or profits from legal services rendered by the limited liability company <u>subsequent</u> to the date of death. Id. Plaintiffs explain that the parties agreed that the payment due to a partner upon death would be the 1/3 – 2/3 formula set forth in the Agreement. Id.

Defendants contend that the facts establish that all revenue of the cases transferred by Mr. Kotlikoff to the K&K Law Firm was derived from work performed after Mr. Kotlikoff's death. (Pls.' Second Supp. Mem. at 2.) Defendants assert that Mr. Kotlikoff did not work on these files after the date of the October 2004 Agreement. Id. at 3. If true, this is not surprising as

---

[1] In their Second Supplemental Memorandum, defendants newly assert that Mr. Beppel's Methodology is fundamentally flawed and therefore his report and testimony should be rejected. (Defs.' Second Supp. Mem. at 7-13.) Review of the Report indicates that Mr. Beppel was merely tasked with calculating the amount owed to plaintiffs by defendants under the Agreement. (Beppel Report at 1-3.) Defendants' arguments regarding Mr. Beppel's methodology concern alleged deficiencies in the expert's analyses that can be addressed through cross-examination. See Paoli R.R., 35 F.3d at 744-45 ("a judge frequently should find an expert's methodology helpful even when the judge thinks that the expert's technique has flaws sufficient to render the conclusions inaccurate. . ."); United States Fidelity and Guar. Co. v. Brown, 2003 WL 25683918, at *1 (M.D. Pa. Oct. 16, 2003) ("[P]laintiff's concerns regarding the expert's methodology and conclusions may be addressed through cross-examination."). The court rejects the defendants' argument that Mr. Beppel's testimony should be precluded because of alleged problems with methodology.

Mr. Kotlikoff was very ill at that time and died shortly thereafter from a malignant brain tumor. Regardless of these assertions, defendants admit that Mr. Kotlikoff secured the clients and worked on these files at least prior to July 1, 2004. Id. Defendants fault Mr. Beppel for not attempting to calculate the actual time Mr. Kotlikoff spent working on these cases. Id. However, it was not necessary for Mr. Beppel to undertake this task as the parties agreed on a profit/expense sharing formula to be applied upon the death of a partner, regardless of the contributions of the parties to the successful resolution of the cases. See Agreement.

Defendants assert that Rule 1:21-1B(d) limits any payment to the Estate to the book value of Mr. Kotlikoff's shares in the K&K Law Firm. However, in their counterclaim, plaintiffs are not seeking the value of Kotlikoff's shares in the K&K Law Firm, but are seeking to enforce a fee-sharing agreement specifically relating to the approximately 258 cases that Mr. Kotlikoff worked on prior to joining the K&K Law Firm.[2] The provisions of Rule 1:21-1B do not bar enforcement of this type of agreement. Mr. Beppel's testimony and report will aid the jury in resolving this contract dispute.

The second category of damages addressed by Mr. Beppel in his report, is for $27,250.72 in an account titled "Monies Received from Old L.K. Account." (Beppel Report at 13.) As explained by Mr. Beppel, this amount was recorded on the K&K Law Firm general ledger as a liability. Id. The funds came into the K&K Law Firm in 2005 and the balance in the account has not changed from 2005 through December 31, 2008. Id.

---

[2] Mr. Beppel's expert report does not address the question of the book value of Mr. Kotlikoff's shares in the K&K Law Firm.

Defendants contend that 42 N.J.S.A. 2B-43 prohibits plaintiffs from asserting an interest in specific property of the K&K Law Firm. (Pls.' Second Supp. Mem. at 11-12.) The statute provides as follows: "A limited liability company interest is personal property. A member has no interest in specific limited liability company property." 42 N.J.S.A. 2B-43. However, the K&K Law Firm has recorded these funds as a liability from the time they were received by the law firm. According to Mr. Beppel, the K&K Law Firm never reported the receipt of these funds as income. (Beppel Report at 13.) Therefore, it may be that these funds never became property of the K&K Law Firm, but have remained funds owed by the law firm to Mr. Kotlikoff. The New Jersey statute does not bar a claim for these funds, and Mr. Beppel's expert testimony and report will aid the jury in resolving a factual dispute.

The third category of damages is for costs advanced by Mr. Kotlikoff on cases assumed by the K&K Law Firm. Id. at 14. The general ledger of Mr. Kotlikoff's law firm dated October 31, 2004, shows client costs advanced in the amount of $251,711.50. Id. Defendants contend that the next to the last paragraph of the Agreement "expressly provides that [defendants] are not responsible for 'advanced costs.'" (Pls.' Second Supp. Mem. at 4.) This paragraph states as follows: "Kafrissen is not responsible for any claims made arising from any work performed on files prior to October 26, 2004. Kotlikoff will indemnify and agrees to hold Kafrissen harmless from any and all such claims." (Agreement at 2 (handwritten modification included).) Defendants argue that this provision is unambiguous, and that "[t]his provision is not limited to claims by third parties; it necessarily includes claims by Kotlikoff himself for work he performed before October 26, 2004, as well as any costs advanced [sic] Kotlikoff may have previously advanced." (Pls.' Second Supp. Mem. at 4 (emphasis in original).)

This court does not agree with defendants' tortured interpretation of this provision of the Agreement. Defendants' interpretation of this provision would mean that Kotlikoff would have to indemnify and hold defendants' harmless from Kotlikoff's own claims for reimbursement against defendants. This is a nonsensical interpretation. The Agreement is clear that case costs prior to the creation of the K&K Law Firm were the responsibility of Kotlikoff. (Agreement at 1.) The Agreement provided the procedure for payment of case costs after the creation of the K&K Law Firm. Id.

To the extent that defendants collected reimbursement from clients and/or settlement funds for costs advanced by Kotlikoff prior to the creation of the K&K Law Firm, plaintiffs may pursue a claim for those amounts and nothing in the Agreement prohibits such a claim. At a minimum, the Agreement is ambiguous as to whether plaintiffs are entitled to reimbursement for the costs advanced by the decedent. Thus, this question should be submitted to the jury after hearing parole evidence on the subject. Mr. Beppel's expert testimony and report will aid the jury in resolving a factual dispute.

The fourth and final category addressed by Mr. Beppel is for rent due to the Estate from K&K Law Firm in the amount of $16,154.90. (Beppel Report at 15.) There appears to be no dispute that K&K Law Firm occupied the offices of Mr. Kotlikoff at 70 Tanner Street, Haddonfield, New Jersey from January to August, 2005. There also appears to be no dispute that Mr. Kotlikoff owned this office space. In the Agreement, Sam Kafrissen represented that the K&K Law Firm intended to "mostly work out of our Philadelphia office," which is "a separate business entity in which the new entity has no interest." (Agreement at 1.) The parties agreed to sharing a "mutual goal . . . to reduce the operating expenses in the New Jersey office so that the

profit distribution is greatest to the partners." Id. It is clear from the terms of the Agreement that the parties contemplated that some work, even a minimal amount, would take place in the New Jersey office. The parties agreed that certain expenses would be incurred with the use of the New Jersey office space, which expenses would decrease the profit distribution to the partners. Presumably, rent would be one of such expenses. At a minimum, the Agreement is ambiguous as to whether defendants owed Kotlikoff rent. Thus, the jury could find that defendants breached the Agreement if K&K Law Firm occupied Kotlikoff's office space but did not pay rent for such usage.

Plaintiffs bear the burden of proving entitlement to rental payments with respect to K&K Law Firm's usage of the New Jersey office space. To the extent that plaintiffs are able to meet this burden, Mr. Beppel's testimony and report regarding appropriate rent will aid the jury in resolving a factual dispute.

For all the above reasons, plaintiffs' (counterclaim and third party defendants') Motion In Limine To Preclude Defendant's (counterclaim and third party plaintiffs') Expert Report and Expert Testimony (Doc. No. 69) is **DENIED**.

An appropriate Order follows.

BY THE COURT:

/s/  Thomas J. Rueter
THOMAS J. RUETER
Chief United States Magistrate Judge